The relief described hereinbelow is SO ORDERED.

Signed March 23, 2009.

_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

**In re:**

**SANDRA JANEL DAVIS,**                             Case No. 07-21278
        **Debtor.**                                                Chapter 7

### MEMORANDUM OPINION AND ORDER SUSTAINING
### TRUSTEE'S OBJECTION TO SCHEDULE C STATEMENT OF EXEMPT PROPERTY

Chapter 7 Trustee Eric Rajala objects to Debtor's claimed exemption of property originally identified as Inter-tel (ESOP) 250 shares Davis Enterprises. The Trustee argues no such employee stock ownership plan (ESOP) existed, and the property is really Debtor's interest in non-exempt stock options and shares obtained through an employee stock purchase plan (ESPP). Debtor has since liquidated all her outstanding stock options and ESPP shares netting over $19,000 in proceeds post-petition. The Trustee maintains the proceeds remain property of the Estate because the property itself was not exempt. The parties submitted the issues based on the pleadings. This matter constitutes a core proceeding over which this Court has jurisdiction.[1]

---

[1] 28 U.S.C. § 157(b)(2)(B); 28 U.S.C. § 1334.

08.11.10 Davis Exemption.wpd

The Court finds the stock options and ESPP shares are not exempt.

**Findings of Fact**

Debtor filed her Chapter 7 petition on June 14, 2007. Debtor originally claimed "Inter-tel (ESOP) 250 Shares Davis Enterprises" as exempt citing Kansas law. On July 14, 2008, Debtor amended her schedules to claim Inter-tel (ESPP) 1,000 shares and Inter-tel stock options as exempt under 11 U.S.C. §522(d)(10)(E).

In 2001, Debtor's then employer, Inter-Tel, granted Debtor the right to purchase 2,000 shares of Inter-Tel at a specified price in exchange for five weeks of unused vacation leave. The right was memorialized in an Acquisition Stock Option Plan. The plan states it is not intended to be an incentive stock option within the meaning of §422 of the Internal Revenue Code. Pre-petition, Debtor twice exercised her option and purchased first 400 then 600 shares and sold the shares for a profit of $4,021.57 and $5,190.74, respectively. On the petition date, Debtor still held the option to purchase 1,000 shares at the grant price. The grant was fully vested and exercisable before the petition date. The options would have terminated by the contract's terms in 2011.

On the petition date, Debtor also owned 367 shares purchased through the Inter-Tel ESPP (not 1,000 as scheduled).

In August, 2007, Inter-Tel merged with Mitel triggering an automatic cancellation of the Inter-Tel stock options and ESPP shares. As part of the merger, Mitel agreed to cash-out Inter-Tel employees' interests in outstanding stock options and ESPP shares at $25.60 per share. Regarding Debtor's unexercised option to purchase 1,000 shares, the difference between Debtor's purchase price and the cash-buy-out netted Debtor $15,725. After taxes, Debtor received $9,804.54 in August, 2007. Mitel also cashed-out the Inter-Tel ESPP shares. Debtor

- 2 -

08.11.10 Davis Exemption.wpd

Case 07-21278    Doc# 70    Filed 03/23/09    Page 2 of 7

received $9,395.20 in September, 2007. The foregoing events occurred post-petition without notice to the Chapter 7 Trustee.

Despite the fact the cash buy-out occurred 2 to 3 months post-petition, Debtor did not accurately amend her schedules until over a year later on July 14, 2008. By then, Debtor had purchased a $5,000 IRA with some of the proceeds. Debtor also paid the Chapter 7 Trustee $2,307.15 of the proceeds to reimburse him for the Estate's share of Debtor's 2007 tax refunds and Debtor's petition date bank balances. Debtor states less than $6,000.00 of the remaining proceeds are still in her bank account. Of the $19,199.74 in total proceeds, Debtor has not accounted for almost $6,000.00.

The Trustee objects to Debtor's amended exemption because neither the stock options nor the ESPP shares is an exempt ESOP and neither the stock options nor the ESPP satisfies the requirements of 11 U.S.C. §522(d)(10)(E). Debtor argues §522(d)(10)(E) is broad enough to encompass the stock options and the ESPP.

**Discussion**

The Trustee bears the burden of proving the exemption is not properly claimed.[2] An exemption under §522(d)(10)(E) requires the benefits received (1) be in the nature of a stock bonus, pension, profitsharing, annuity, or similar plan or contract; (2) arise on account of illness, disability, death, age or length of service; and (3) are reasonably necessary for the support of the debtor and the debtor's dependents.[3] The exemption protects future income streams which are intended to replace wages lost upon retirement or disability.[4] The common feature of a stock

---

[2] Fed. R. Bankr. P. 4003.
[3] *Rousey v. Jacoway*, 544 U.S. 320, 325-26 (2005).
[4] *In re Michael,* 339 B.R. 798, 802 (Bankr. N.D. Ga. 2005) *citing* H.R. Rep. 95-595 at 362 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318.

bonus, pension, profitsharing, and an annuity listed in §522(d)(10)(E) is these plans all provide an income substitute for hourly or salaried wages.[5] Like social security benefits, unemployment compensation, public assistance, veteran benefits, disability benefits, and alimony, support or maintenance, all of which are also exempt under §522(d)(10), exempting stock bonus plans, pensions, profitsharing plans, annuities, and other similar plans and contracts protects income which substitutes for wages.[6] These types of benefits are exempt in order to assist the debtor's fresh start upon the occurrence of illness, disability, or retirement.[7] The benefits described refer to payment methods not mere savings or investment accounts.[8]

ESOPs and employee stock option plans are not the same even though they would create the same acronym. ESOPs are tax-qualified retirement plans corporate employers establish to provide benefits to their employees in the form of stock ownership in the company. Such qualified retirement plans are exempt under Kansas law.[9] An employee stock option plan, on the other hand, is a contract between the company and the employee which grants the employee the right to buy a specific number of company's shares at a fixed price within a certain time. Employees holding stock options profit by exercising their options at a higher market share price than the grant price. For example, an employee granted the option of purchasing 1,000 shares at $15 per share profits by exercising his option when the market price is $25 per share. The employee purchases the shares for the $15 grant price and sells the shares at the $25 market price realizing a taxable gain of $10 per share. Employee stock option plans are governed by state contract law, not federal law.

---

[5] *Rousey v. Jacoway*, 544 U.S. at 331.
[6] *Id.*
[7] *Id.* at 326-27.
[8] *Id.* at 331; *In re Michael,* 339 B.R. at 803.
[9] K.S.A. §60-2308.

- 4 -
08.11.10 Davis Exemption.wpd
Case 07-21278   Doc# 70   Filed 03/23/09   Page 4 of 7

Stock options become property of the estate.[10] Stock options usually are not exempt except to the extent the options vest post-petition.[11] Reported cases addressing the treatment of stock options in bankruptcy usually address options which are not vested on the petition date, but later become vested once the debtor has remained employed with the company until the contractual vesting date. Like other contingent interests such as tax refunds, the bankruptcy court prorates the options' value to account for the debtor's pre- and post-petition efforts to realize the entire value of the asset.[12]

An ESPP is more analogous to an option plan than an ESOP. Whereas an ESOP is a retirement plan which invests in the employer's stock, an ESPP is an individual investment vehicle enabling the employee to purchase stock at a discounted price and realize a profit by selling the stock at a higher price. ESPPs and employee stock options plans are set up primarily to provide incentives to employees to save and profit while investing in the company. As such, ESPPs and stock options are individual assets held by the employee which provide an opportunity for supplemental income, not replacement income.

**Analysis**

In this case, the Trustee has met his burden to prove the exemptions in the options and ESPP shares are improperly claimed. Debtor's only argument to support the exemptions is that §522(d)(10)(E) is broad enough to exempt "virtually every type of retirement account". Debtor would have this Court assume a stock option plan and an ESPP are retirement plans without any evidence to support such a finding. Debtor's stock option plan most obviously is not a

---

[10] *In re Wick,* 276 F.3d 412, 415 (8th Cir. 2001).
[11] *In re Allen,* 226 B.R. 857, 863-64 (Bankr. N.D. Ill. 1998).
[12] *Id.* at 867; *In re Denadai,* 272 B.R. 21 (D. Mass. 2001); *In re Lawton,* 261 B.R. 774 (Bankr. M.D. Fla. 2001); *In re Michener,* 342 B.R. 428 (Bankr. D. Del. 2006); *but see, In re Dibiase,* 270 B.R. 673, 678 (Bankr. W.D. Tex. 2001) (rejects *Allen* and refuses to prorate options pre- and post-petition; options' entire value is nonexempt even though it vested post-petition); *In re Carlton,* 309 B.R. 67, 71 (Bankr. S.D. Fla. 2004) (same).

- 5 -
08.11.10 Davis Exemption.wpd
Case 07-21278    Doc# 70    Filed 03/23/09    Page 5 of 7

retirement account. Pursuant to the grant, the unexercised options would have terminated by the contract's terms in 2011. By Debtor's own admission, she had forgotten about the options. But for the merger and forced cash-out, Debtor may not have realized the value of this asset. Upon being reminded of the options in August, 2007, Debtor should have advised the Trustee as the Trustee was the only person entitled to exercise the options post-petition.[13] Debtor's stock options are not similar to a stock bonus, pension, profitsharing plan, or an annuity. As *Rousey* explained, the foregoing plans are payment methods for benefits received on account of disability, retirement, and other listed events which take away or impair a debtor's ability to earn a salary or an hourly wage. Debtor's options do not meet either the first or second requirement of §522(d)(10)(E).

Likewise, the shares Debtor purchased through Inter-Tel's ESPP were not held in a retirement account. Again, as *Rousey* explained, §522(d)(10)(E) is intended to exempt benefits the debtor will receive upon the loss or impairment of his salary or hourly wage. Mere savings or general investment accounts are not encompassed by §522(d)(10)(E).[14] Pursuant to the ESPP, the only limit on Debtor's stock was the requirement the stock could not be sold by the employee within 12 months of purchase. The ESPP did not otherwise limit the Debtor's ability to liquidate the stock. Realizing the stock's value did not depend upon Debtor's illness, disability, death, age, or length of service. Thus, Debtor's ESPP shares do not meet either the first or second requirement of §522(d)(10)(E).

## Conclusion

---

[13] *In re Michener,* 342 B.R. 433 (the Trustee, not the debtor, should decide whether and when to exercise options post-petition).

[14] *Rousey v. Jacoway*, 544 U.S. at 331.

- 6 -

08.11.10 Davis Exemption.wpd

The Trustee has established two elements required for Debtor's §522(d)(10)(E) exemption are lacking. The Trustee's Objection to Debtor's Amended Schedule C Statement of Exempt Property is SUSTAINED. The Debtor is ordered to turn over the value of the options and the ESPP shares.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

08.11.10 Davis Exemption.wpd